ALMERINDO PORTFOLIO, Trading as PORTFOLIO & Co., Respondent, *v.* HARRY RUBIN, Appellant.

First Department, March 11, 1921.

Sales — performance and breach — action to recover contract price of four pieces of cloth — acceptance of two pieces and rejection of two as not conforming to contract — acquiescence by seller in rejection — effect of Personal Property Law on common-law rule as to acceptance or rejection under indivisible contract.

In an action to recover the contract price for four pieces of cloth it appeared that the defendant accepted two pieces and rejected two as not conforming to the contract of sale and so notified the plaintiff; that plaintiff took no action on the notice of rejection for nearly one month and then only by bringing this action to recover the full price; that defendant tendered the price of the two accepted pieces and paid the amount into court, and that the theory of the action was that all the goods delivered conformed to the contract.

*Held,* on all the evidence, that the plaintiff acquiesced in the rejection of the two pieces and that a judgment in favor of the defendant was proper.

*Quære,* as to whether the Personal Property Law should be construed as changing the common-law rule that under a single indivisible contract for the sale and delivery of goods the purchaser must accept or reject the whole.

SMITH, J., dissents.

APPEAL by the defendant, Harry Rubin, from a determination and order of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of said court on the 17th day of February, 1920, reversing a judgment of the Municipal Court, Borough of Manhattan, Third District, in favor of the defendant.

*Joseph J. Dreyer* of counsel [*Samuel Kahan,* attorney], for the appellant.

*Louis B. Brodsky,* for the respondent.

LAUGHLIN, J.:

The action is for goods sold and delivered. The only points litigated were with respect to whether part of the goods delivered conformed to the contract, and the right of the defendant to retain part as in conformity with the contract and to reject part if not in conformity therewith. This probably accounts for the fact that the evidence fails to show definitely what the contract was or the basis on which the contract price of the goods was determined. It appears to have been assumed, however, that there was a sale, under a single contract, of four pieces of goods consisting of 215⅞ yards at a specified price per piece or per yard aggregating $638.99. The defendant accepted two of the pieces, the purchase price of which was $311.92, and according to evidence offered in his behalf, which was controverted but on which the trial court found in his favor, he promptly notified the plaintiff by letter, in effect, that he had accepted two of the pieces but rejected the other two on the ground that they did not conform to the contract and was holding them subject to the plaintiff's orders. The court also found that the rejected pieces of goods did not conform to the contract. The record shows that the defendant by his answer tendered payment of the purchase price of the two pieces which he accepted and paid the amount into court. The evidence with respect to whether the rejected goods conformed to the contract was not reviewed by the Appellate Term and we are not asked to review it. The only point considered by the Appellate Term (110 Misc. Rep. 303) and argued here is, whether under the law the defendant was at liberty to accept the goods which conformed to the contract and to reject those which did not. The majority of the Appellate Term held that by acceptance of a part of the goods the defendant became liable for the purchase price of all of them, on the theory that section 156 of the Personal Property Law (as added by Laws of 1911, chap. 571), defining " divisible contract," did not change the rule of the common law with respect to the right of the purchaser to accept part and reject part of the goods sold by a single contract; the minority opinion, however, expresses the contrary view. Said section 156, so far as here material, provides as follows: " In this article,

First Department, March, 1921.　　　　[Vol. 196

unless the context or subject-matter otherwise requires: * * * ' Divisible contract to sell or sale ' means a contract to sell or a sale in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation." The only other references in the Personal Property Law to a divisible contract are in sections 88 and 89 (as added by Laws of 1911, chap. 571). Section 88 provides, among other things, in subdivision 2, that where there is *a sale* of specific goods " and the goods without the knowledge of the seller have perished in part or have wholly or in a material part so deteriorated in quality as to be substantially changed in character, the buyer may at his option treat the sale * * * (b) As transferring the property in all of the existing goods or in so much thereof as have not deteriorated, and as binding the buyer to pay the full agreed price if the sale was indivisible, or to pay the agreed price for the goods in which the property passes if the sale was divisible." Section 89, subdivision 2, provides in substance the same with respect to contracts *to sell* specific goods, part of which subsequently, but before the risk passes to the buyer, perish without the fault of the seller or the buyer, or the whole or a material part of which so deteriorate in quality as to be substantially changed in character. These references in the statute to divisible and indivisible contracts are not referred to in either opinion at the Appellate Term.

Prior to the enactment of article 5 of the Personal Property Law, known as the Sales of Goods Act, it was the rule of the common law as administered in this jurisdiction, that where a single contract of sale was divisible, as where it embraced different kinds or grades of goods at specified prices for each, the goods of one kind or grade might be accepted and others rejected by the buyer, in the absence of evidence that the prices were fixed with reference to the entire quantity. (*Pierson* v. *Crooks,* 42 Hun, 571; affd., 115 N. Y. 539.) But there was no definite rule by which it could be readily decided whether a single contract was or was not thus divisible, and it was held that it depended on the intention of the parties, and often became a question of fact. (*Clark* v. *West,* 137 App. Div. 23; affd., 201 N. Y. 569; *Equitable Trading Co.* v. *Stoneman,* 131 App. Div. 376. See, also, *Shinn* v. *Bodine,* 60

Penn. St. 182.) That being so, if the Legislature had defined generally what is to be deemed a divisible contract, there would be no difficulty in holding that the common-law right to recover on a divisible contract would apply to such contracts *as so defined.* That, however, the Legislature did not do, but instead it confined the definition to the words " divisible contract to sell or sale," as used in the article containing section 156, which is article 5 relating to " Sales of Goods," added to the Personal Property Law by chapter 571 of the Laws of 1911. The definition, therefore, merely aids in the construction of the provisions of that article. Section 126 relates to contracts for the sale of goods to be delivered by stated installments to be separately paid for, and provides that where the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or to pay for one or more installments, " it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." It does not appear that the contract here in question was such an installment contract, and, therefore, we are not aided by the provisions of section 126. Section 125, by subdivision 1, provides that where a seller delivers to the buyer a quantity of goods less than the quantity he contracted to sell, the buyer may reject them; and by implication the buyer in such case is permitted to accept them, for it is provided that if he accepts or retains them, knowing that the seller is not going to perform the contract in full, he must pay for them at the contract rate, but that if he has used or disposed of them before he knows that the seller does not intend to perform in full, he shall only be liable for their fair value. Subdivision 2 of said section provides that where a quantity of goods larger than is called for by the contract is delivered, the buyer may accept the goods included in the contract and reject the rest or may reject the whole; and by implication he is permitted to accept the whole, for it is provided that if he does he must pay for

them at the contract rate. Subdivision 3 of said section provides as follows: " 3. Where the seller delivers to the buyer the goods he contracted to sell mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole."

It is doubtful whether the two pieces of goods which conformed to the contract were *mixed* with the other two pieces within the contemplation of said subdivision 3 (See Williston Sales, § 462), or whether it could be held that the seller here delivered less goods than he contracted to sell so as to bring the action within subdivision 1 of the section. It was well settled at common law in this jurisdiction that under a single indivisible contract for the sale and delivery of goods, the purchaser must accept or reject the whole. (*Pierson* v. *Crooks, supra.* See, also, *Simon* v. *Wood,* 17 Misc. Rep. 607; *Mendetz* v. *Wood & Co.,* 86 id. 52.) A rule, somewhat more liberal, prevails in England and in some other jurisdictions. (Williston Sales, 863; *Molling* v. *Dean,* 18 T. L. R. 217; *Cohen* v. *Pemberton,* 53 Conn. 221; *Holmes* v. *Gregg,* 66 N. H. 621.) If the Legislature intended to change that rule it has not made such intent clear, and by section 154 it expressly continued the existing law as to all cases not covered by the statute. Our views are not in accord on the point as to whether the Personal Property Law should be construed as changing the common-law rule on this point and, since the facts with respect to the contract were not sufficiently shown to present it, for it does not appear that this was not a contract which would have been deemed divisible at common law, we refrain from expressing an opinion thereon. The plaintiff was notified that the defendant intended to reject part and to retain and pay for the rest of the goods, and there is no evidence that the plaintiff claimed that he was entitled to have all of the goods accepted or rejected. The defendant did not attempt to rescind the contract in part. He merely rejected part of the goods as not conforming to the contract. The plaintiff had a right, if he acquiesced in the defendant's objection to part of the goods, to replace the rejected goods by others conforming to the contract (*Pierson* v. *Crooks, supra*); but, evidently on the theory claimed on the trial that all of the goods delivered were in compliance with

the requirements of the contract, he did not do so. It may have been to his interest to have the two pieces accepted, even though the others were rejected, and since he did not refuse to acquiesce in the defendant's retaining them, the court would have been warranted in finding that he assented thereto and acquiesced therein. Such a finding, although not expressly made, may be implied in support of the judgment, for specific findings were not required. So far as shown by the evidence he took no action on the notice given by the defendant or in his behalf with respect to the acceptance of part and the rejection of part of the goods for the period of twenty-eight days, and then only by bringing this action, in which he erroneously claimed on the trial that all of the goods were in accordance with the contract. No objection was interposed to the evidence of notices by or on behalf of the defendant that he accepted part and rejected part of the goods. If acceptance of part bound defendant to pay for all the goods, that evidence was wholly immaterial to the issues. Its reception without objection may, I think, be deemed a waiver of a defense of an implied agreement that defendant might retain part of the goods, if such defense were necessary. On the finding, which I think is implied, that the plaintiff received these notices, it follows, since he denied having received them, that he took no action thereon until he brought this action. I am of opinion, therefore, that the case was rightly decided by the Municipal Court, regardless of whether the common-law rule to which reference has been made has been changed by the Personal Property Law.

It follows that the determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs.

CLARKE, P. J., and PAGE, J., concur; SMITH, J., dissents; MERRELL, J., not voting.

Determination reversed and judgment of Municipal Court affirmed, with costs to appellant in this court and in the Appellate Term.